(C. D. 350)

ABAD ESTEVE CORPORATION *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 6, 1940)

*Strauss & Hedges* (*Eugene F. Blauvelt* of counsel) for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*Charles J. Miville* and *Alfred A. Taylor, Jr.*, special attorneys), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges

EVANS, Judge: This is an action wherein the plaintiff seeks to recover certain sums of money claimed to have been unlawfully exacted by the collector of customs at the port of New York on an importation

of merchandise classified by the collector as milled rice, bran removed, all or in part, and assessed with duty at 2½ cents per pound. The plaintiff filed a protest and an amendment in which he asserts various claims but in his brief he states as follows:

The merchandise the subject of these protests was assessed with duty at 2½ cents per pound under the provision of Par. 727 of the Tariff Act of 1930, reading "milled rice (bran removed, all or in part), 2½ cents per pound" and is claimed dutiable at only 1½ cents per pound under the provision of the same paragraph reading "brown rice (hulls removed, all or in part), 1½ cents per pound". There are alternative claims in the protests but we are relying principally upon the 1½ cents per pound claim.

The 1½ cents per pound claim is the claim that the merchandise should have been classified as brown rice, hulls removed, all or in part. We therefore print only the provisions of paragraph 727 of the Tariff Act of 1930, which read as follows:

PAR. 727. Paddy or rough rice, 1¼ cents per pound; brown rice (hulls removed, all or in part), 1½ cents per pound; milled rice (bran removed, all or in part), 2½ cents per pound; broken rice, which will pass readily through a metal sieve per forated with round holes five and one-half sixty-fourths of one inch in diameter, and rice meal, flour, polish, and bran, five-eighths of 1 cent per pound.

The merchandise was imported from British Guiana and the entire testimony is by depositions. The plaintiff relies upon the evidence given by one Decuroop Mahraj, who described himself as a person 26 years of age and by occupation a company director of 10 years' knowledge and experience in steaming padi, drying the same, and deciding when to stop, and milling same into brown rice and otherwise. He also stated that he was familiar with the importations involved, that he personally knew how this material was processed and prepared, and that the part he personally had in it was given in his answer to question 2 of the deposition, which answer was cited above, to wit:

I have ten years' knowledge and experience in steaming padi, drying the same, and deciding when to stop, milling same into brown rice, and otherwise.

The merchandise was processed at the Coffee Grove rice mill, Essequibo, British Guiana. When asked to state in sequence the processes to which this merchandise was subjected, particularly specifying all processes separate from the milling process, he answered:

Padi was put into steeping tanks, and there steamed for the requisite length of time, wherefrom the same was spread upon concrete floors and dried in the sun for the requisite length of time and finally milled into brown rice.

He stated that the rice in question was neither brushed nor polished and that brushing or polishing was not a part of the milling process. He testified that the rice was not parboiled, that all of the hull was removed but that none of the bran was removed. He was asked to give the significance of the term "brown" as applied to the mer-

chandise and stated that brown rice is rice which is steamed but neither brushed nor polished. He produced a sample of rice before the hull was removed and 5 samples of milled rice which have not been steamed or parboiled. They were received in evidence as Illustrative Exhibits E, A, B, C, D, and F, respectively.

It will be noted that in none of his answers does he give a description of any of the processes of milling. He was only requested to describe "all processes separate from the milling process." Again he described in practically the same language what he called the steaming process. He stated:

The steaming process is as follows:—The padi is put into steeping tanks, and soaked for the requisite length of time; the water is removed. The padi is steamed in the said steeping tanks for the requisite length of time, and, thereafter, removed for drying.

The Government's first witness, Fred W. Rickert, stated that for 42 years he had been with the company with which his name is associated, to wit, Rickert Mills, Inc., New Orleans, La., where he had worked through all the departments of rice milling. He was familiar with the term "milled rice" and with the terms used in the milling of rice. He learned these things by personal contact in the manufacturing end and he gave a description of the processes of milling rice. He gave four definitions of rice, covering its passage from raw to the finished process as follows:

1. Rough rice or paddy rice (raw material);
2. Brown rice, or rice from which only the chaff or first cuticle, as well as foreign matter, has been removed;
3. Under-milled rice, which is rice that has part of the bran, but not all of the bran removed. This rice has partly gone through the process of milling.
4. Milled rice from which the greater part or all of the bran and polish cuticles have been removed. Milled rice is often sold with a small amount of bran still remaining in the grain, and also rice from which all of the bran and polish has been removed, is sold as milled rice. It is just a question of consumer preference in different parts of the world.

He examined the official sample, Exhibit 1, and stated that all the hulls and part of the bran have been removed, and that with reference to this sample the bran had been either partially or entirely removed in the process of milling. He further stated that the eye or germ of rice is removed in the milling process when the bran is removed and that the germ or eye was removed from the official sample, which signifies that part of the bran had been removed.

Mr. W. D. Smith, Supervisor of Rice Inspection for the U. S. Department of Agriculture, who assisted with the investigational work and otherwise in establishing the standards for the grading of rice in the United States and for 19 years has been familiar with the milling of rice, having done investigational work in practically every mill in the United States, is familiar with rice described as patna rice.

He examined the official sample, Exhibit 1 herein, and stated that without doubt most of the bran had been removed from the rice in said sample. He further stated that a kernel or rice grain has a germ or eye and that he could tell by visual examination whether such eye or germ had been removed. He said that in the milling of rice the eye or germ is removed, that it is removed during the scouring process to which rice is subjected after the removal of the hulls, and that the eye or germ had been removed from the grains of rice in the official sample, Exhibit 1 herein. He said that from his experience he would say that the bran is removed when the germ or eye is removed; that the official sample was not brown patna rice but that it was known to him as parboiled milled rice, and that according to the grades and standards adopted in the United States the official sample, Exhibit 1, is milled rice.

Mr. W. M. Reid, managing executive of the Rice Miller's Association, stated that for the last 7 years he had traveled over the southern rice-producing areas buying and grading rice, that he operated a mill for 13 years in Texas and for 18 months represented the United States rice industry in the West Indies, having been located at San Juan, Puerto Rico, where he was an expert on rice, and that he acted as an arbitrator and adjuster of claims which from time to time arise out of the difference of opinion with respect to the quality and condition of rice. He bought and sold rice for many years and was familiar with the grading thereof. He also described the process of milling rice. He examined Exhibit 1, the official sample, and stated that it was long-grained, milled rice. He stated that although he had not bought or sold any of this class of material he had examined and classified, as an expert on rice, rice similar in all respects. He defined what constituted the hull or bran of rice and stated that the hulls and practically all the bran had been removed from the rice in Exhibit 1, which bran had been removed in the milling. He also stated that the germ or eye of the rice grain or kernel is removed in the process of milling and that the eye had been removed from the merchandise as shown in Exhibit 1, that the germ is removed during the process of scouring of the bran off the starchy kernel. From his experience he would say that the bran is removed when the germ or eye is removed from rice. He also stated that the sample is not known to him as brown patna rice but that it is known to him as a milled rice of the rexoro variety which had been treated by parboiling.

The testimony of the experts produced by the defendant, coupled with a physical examination of the rice in question, convinces the court that quite the major portion of the bran was removed from the rice in the official sample herein. The experts testified that the bran is removed from rice in the process of milling. Undoubtedly the grades of rice provided for in the tariff act were made with reference

to the standards known in this country. The testimony of the experts printed herein, wherein that testimony conflicts with the testimony of an expert at the point of production, ought, it seems to the court, to receive greater weight. We therefore find that the rice in question has a major portion of the bran removed and is not brown rice (hulls removed all or in part) within the purview of the provisions of paragraph 727 of the Tariff Act of 1930.

The record in this case persuades us that the rice in question is similar in all material respects to that which was involved in the *Southern Rice Sales Co., Inc.* v. *United States*, 25 C. C. P. A. 201, T. D. 49304.

We therefore hold that the protest should be overruled. It is so ordered.